UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DEMETRIUS HULSEY, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| vs. | ) Case No. 4:18 CV 1500 MTS |
| | ) |
| EILEEN RAMEY, | ) |
| | ) |
| Respondent. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on Petitioner Demetrius Hulsey's *pro se* Petition under 28 U.S.C. § 2254 for writ of habeas corpus. For the following reasons, Petitioner's § 2254 Petition is denied.

**I.     Procedural Background**

Petitioner is currently incarcerated at the Farmington Correctional Center in Farmington, Missouri. Petitioner was charged in the Circuit Court of St. Louis City with two counts of first-degree robbery and two counts of armed criminal action. Doc. [1] at 1. A jury found Petitioner guilty on the two robbery counts and not guilty on the armed criminal action counts. *Id.* The trial court sentenced him to concurrent terms of twenty years' imprisonment. On March 11, 2014, Petitioner's convictions and sentences were affirmed on direct appeal. *See State v. Hulsey*, 424 S.W.3d 464 (Mo. Ct. App. 2014).

Petitioner filed a timely *pro se* Missouri Supreme Court Rule 29.15 motion for post-conviction relief, and then through appointed counsel filed an amended motion. The motion court denied Petitioner's amended motion without an evidentiary hearing. Doc. [9-10] at 1. Petitioner

1

appealed. The Missouri Court of Appeals reviewed the Petitioner's claims and affirmed the judgment of the motion court on October 31, 2017. *See State v. Hulsey*, 532 S.W.3d 743 (Mo. Ct. App. 2017). On September 6, 2018, Petitioner filed his *pro se* Petition under 28 U.S.C. § 2254 for writ of habeas corpus. Doc. [1].

## II.  Factual Background

The Afghan Market ("Market"), a convenience store on South Grand Boulevard in St. Louis, Missouri, was robbed twice in the same week in February 2011. Doc. [9-1] at 221-231. Farhad Ghasfori, a store clerk who was working at the Market when both robberies occurred, testified at trial that on February 12, 2011, a tall man whose face was partially covered by a bandana, showing only his eyes, walked into the market, pulled a gun on him, and demanded money from the cash register. *Id.* at 223-224. Mr. Ghasfori recognized the man as a customer, stating, "basically I knew the guy, who it was, because it was a regular customer that used to come to the store, buy cigarettes and snacks." *Id.* at 224. Mr. Ghasfori had worked at the store for about six months and had seen the man, on average, three times a week. *Id.* at 225-226. He testified that he had "absolutely no doubt in [his] mind" that the man had a gun in his hand because it was black and pointed at his face. *Id.* at 226-227. Mr. Ghasfori took the money out the cash register, handed it to the man, and the man left. *Id.* at 227-228. Six days later, on February 18, 2011, the same man robbed the market again. *Id.* at 228. This time his face and hair were more visible to Mr. Ghasfori as the man merely tucked his nose into his shirt. *Id.* at 228-229, 246. Police were called regarding both incidents. *Id.* at 230-231, 265-267, 286-288.

With the information that a man had run north on Arkansas Street, Detective Leonard Blansitt started his investigation, believing that the suspect lived nearby. *Id.* at 288. He entered the suspect's physical description, including height and weight, into the "Crime Matrix Computer

2

System." *Id.* at 289. Detective Blansitt testified, "the description of the robber was pretty distinctive; six foot four, 230-250 pounds, very large individual. We have a system called the Crime Matrix Computer System. I conducted a search in there of that 3600 block, which led me to only one person, which was Mr. Hulsey." *Id.* The Petitioner's mother also lived near the market. *Id.* at 292. The police then compiled a photo line-up, including Petitioner's photo, and showed it to Mr. Ghasfori. *Id.* Mr. Ghasfori indicated, from both that photo line-up and a subsequent live line-up, that Petitioner had robbed him both times. *Id.* at 232-236, 292, 296.

At trial, Petitioner testified in his own defense and said that he lived at his aunt's house across town around the time of the robberies and that he did not have a car. *Id.* at 323-327. His aunt, Amanda Bradley, testified that she had never dropped him off at his mother's house during the time period of the robberies and that she knew of no friends who had picked Petitioner up during the time that he stayed at her house. *Id.* at 318-319.

Much of the State's cross-examination concerned that, though he may have lived at his aunt's house and though he may not have had a car, he could have still been on the other side of town during the specific times of the robberies. *See e.g.*, *id.* at 314-317, 333. Petitioner acknowledged at trial that he had been inside the Afghan market numerous times when he would visit his mother. *Id.* at 325-326; *see also id.* at 328-329. The State questioned Petitioner about talking with Detective Blansitt and if he recalled Detective Blansitt telling him at the live line-up that he had been identified, and Petitioner responded, "I don't even go to the south side." *Id.* at 340-342. Petitioner testified that the statement was not true, and he also denied that he had said that to Detective Blansitt. *Id.* at 342.

Subsequently, the State asked Petitioner if he recalled making another, contradictory statement to Detective Blansitt where, in explaining why the market clerk had apparently identified

3

him, Petitioner said he had been identified because he was a customer in the store and had been in the store. *Id.* at 342-343. Petitioner agreed that he had said this to the detective. *Id.*

The State called Detective Blansitt to testify about the statements Petitioner had made to him around the time of the live line-up. *Id.* at 353-359. Detective Blansitt testified that he advised Petitioner of his *Miranda* rights and told him that he was under arrest for two robberies. *Id.* at 353-354. Petitioner indicated that he would invoke his rights and would not speak. *Id.* at 354. Asked how Petitioner had then made additional statements, Detective Blansitt testified that as they were sitting around, Petitioner had asked where the robberies occurred and he had told him at the "Afghan Market," whereupon Petitioner said that he "never goes on the south side and he'd never been in that market." *Id.* Detective Blansitt then asked Petitioner if he intended to waive his rights and speak, and Petitioner said "no," whereupon the detective testified that he stopped talking to Petitioner. *Id.* Shortly thereafter, Detective Blansitt told Petitioner that he would be placed in a live line-up. *Id.* at 354-355. He asked Petitioner which position he would like to be in and "advised him he'd already been identified, positively identified in a photo line-up." *Id*. at 355. Petitioner responded, "That's how he picked me out 'cause I've been in the store before." Detective responded to him, "You just told me you'd never been in the store." And again, Detective Blansitt asked Petitioner, "Are you waiving your rights?" Petitioner said, "No." *Id.* Detective Blansitt testified he then told Petitioner that he was "not going to speak with [him] then." *Id.* Petitioner's trial counsel did not object to the introduction of the evidence of his statements to Detective Blansitt. *Id.* at 353-356.[1]

---

[1] This case had previously resulted in a hung jury. Prior to that trial, Petitioner's trial counsel had filed a motion to suppress Petitioner's statements made to Detective Blansitt, and a hearing was held concerning the motion in front of the same trial judge. Doc. [9-2] at 2-17. Before the start of this trial, the trial court indicated that it would maintain its previous ruling and allow Petitioner's statements to be admitted, denying Petitioner's motion to suppress. The trial court stated its understanding that the issue was somewhat moot, in that the State was not intending to use the statements in its case-in-chief. *Id.* The trial court, however, indicated that if Petitioner testified, the substance of the comments would be proper cross-examination. *Id.*

The jury found Petitioner guilty of the two robbery counts and found him not guilty of the armed criminal action counts. Doc. [9-1] at 396. On January 10, 2013, the trial court sentenced Petitioner to two concurrent terms of twenty years in the Missouri Department of Corrections. Doc. [9-2] at 17.

### III.     Legal Standard

When a claim has been adjudicated on the merits in state-court proceedings, habeas relief is permissible under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), though such relief is "limited and deferential." *Lonholt v. Iowa*, 327 F.3d 748, 751 (8th Cir. 2003). Under AEDPA, 28 U.S.C. § 2254(d), habeas relief is only permissible if the state court's determination:

> (1) Resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) Resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

A state court's decision is "contrary to" clearly established federal law if "it applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or if it confronts a set of facts that is materially indistinguishable from a decision of the [Supreme Court] but reaches a different result." *Brown v. Payton*, 544 U.S. 133, 141 (2005). "The state court need not cite or even be aware of the governing Supreme Court cases, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'" *Brown v. Luebbers*, 371 F.3d 458, 467 (8th Cir. 2004) (quoting *Early v. Packer*, 547 U.S. 3, 8 (2002)). "In the 'contrary to' analysis of the

5

state court's decision, [the federal court's] focus is on the result and any reasoning that the court may have given; the absence of reasoning is not a barrier to a denial of relief." *Id.*

A decision involves an "unreasonable application" of clearly established law if "the state court applies [the Supreme Court's] precedents to the facts in an objectively unreasonable manner," *Payton*, 544 U.S. at 141, *Williams v. Taylor*, 529 U.S. 406 (2000), or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." "Clearly established" Supreme Court law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Id.* at 412. "An 'unreasonable application' is different from an incorrect or erroneous application; a prisoner must establish that a state court's adjudication was not only wrong, but also objectively unreasonable, such that 'fair-minded jurists' could not disagree about the proper resolution." *Smith v. Titus*, 958 F.3d 687, 691 (8th Cir. 2020).

When reviewing whether a state court decision involves an "unreasonable determination of the facts," state court findings of "basic, primary, or historical facts" are presumed correct unless the petitioner rebuts the presumption with clear and convincing evidence. *Collier v. Norris*, 485 F.3d 415, 423 (8th Cir. 2007) (citations omitted); 28 U.S.C. § 2254(e)(1). Erroneous findings of fact by the state courts do not ensure the grant of habeas relief. Rather, the determination of these facts must be unreasonable considering the evidence of record. *Id.*

### IV.    Discussion

Petitioner asserts one claim of trial error and one claim of ineffective assistance of trial counsel. First, Petitioner claims that the trial court erred by admitting into evidence the statements he made to Detective Blansitt; and second, that trial counsel was ineffective in failing to move to

6

suppress his pretrial identification because it was suggestive.

### A. Procedural Default

Both of Petitioner's claims are procedurally defaulted because neither of them were properly preserved in state court proceedings. Petitioner defaulted on his first claim of error at trial because his trial counsel did not object to the admission of Petitioner's conflicting statements to Detective Blansitt. Petitioner's second ground is procedurally defaulted because he did not raise it in his Rule 29.15 motion. Doc. [9-10] at 5.

In Missouri, "a claim must be presented 'at each step of the judicial process' in order to avoid default." *Jolly v. Gammon*, 28 F.3d 51, 53 (8th Cir. 1994) (quoting *Benson v. State*, 611 S.W.2d 538, 541 (Mo. Ct. App. 1980)). However, a state prisoner who defaults on his federal claims in state court because of a state procedural rule can overcome that default if the prisoner can demonstrate "cause for the default and actual prejudice as a result of the alleged violation of federal law or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). As such, this Court will review Petitioner's procedurally defaulted claims to determine if they can overcome procedural default.

### B. Grounds

**Ground One: Petitioner claims the trial court erred by admitting his statements made to Detective Blansitt during the time of the live line-up into evidence. Specifically, he contends the police took his statements in violation of his right against self-incrimination.**

"Because questions concerning the admission of evidence are matters of State law, [this Court's] review of such questions in a habeas corpus proceeding is limited to determining whether the defendant's constitutional rights have been violated." *Rainer v. Department of*

7

*Corrections*, 914 F.2d 1067, 1072 (8th Cir. 1990). *See also Parker v. Bowersox*, 94 F.3d 458, 460 (8th Cir. 1996). A habeas petitioner,

> must show more than error requiring reversal on direct appeal to obtain relief. He must show that the alleged error rendered the entire trial fundamentally unfair— that there is a reasonable probability that the error complained of affected the outcome of the trial—i.e., that absent the alleged impropriety, the verdict probably would have been different.

*Carter v. Armontrout*, 929 F.2d 1294, 1296 (8th Cir. 1991) (internal quotations omitted). *See also Mercer v. Armontrout*, 844 F.2d 582, 587 (8th Cir. 1988) (noting that habeas relief is available only if the alleged error "fatally infected the trial" and deprived the petitioner of "the fundamental fairness which is the essence of due process"). This Court, in making its fundamental fairness determination, must "review the totality of the facts in the case and the fairness of the whole trial." *McDaniel v. Lockhart*, 961 F.2d 1358, 1360 (8th Cir. 1992)

The Missouri Court of Appeals reviewed this claim on direct appeal and found it be meritless:

> Here, we find no plain error because [Petitioner] volunteered the statements and was not subject to interrogation. When Detective Blansitt first spoke with [Petitioner], he advised him of his *Miranda* rights and told him he was under arrest for robbery of the Afghan Market. [Petitioner] invoked his right to counsel and then asked Detective Blansitt, "Where was the market again?" Detective Blansitt repeated the information. [Petitioner] responded that he did not know about that market, had never been there, and did not go to the south side. Although Detective Blansitt commented that [Petitioner]'s mother lived around the corner from the market, he then asked whether [Petitioner] wanted to speak with him, and [Petitioner] said "no." Detective Blansitt informed [Petitioner] that he was about to be placed in a physical lineup and that he had already been identified in a photographic lineup. [Petitioner] replied: "Well, that's how he identified me is because I've been in there before."
>
> Detective Blansitt's statements to [Petitioner] were not questions but merely explanations of the charges against [Petitioner] and of lineup procedure that [Petitioner] was about to undergo. The explanations were nothing more than statements "relating to routine incidents of the custodial relationship." *State v. Cook*, 67 S.W.3d 718, 722 (Mo. Ct. App. 2002) (quotation omitted). As such, [Petitioner] was not subject to interrogation, and there was no violation of his

8

> privilege against compulsory self-incrimination. Accordingly, [Petitioner]'s claim–that the trial court erred in denying his motion to suppress and admitting his statements–does not facially establish substantial grounds for believing that manifest injustice or miscarriage of justice has occurred.

Doc. [9-6] at 6-7.

To be valid, a waiver of the rights protected by *Miranda* must be voluntary, knowing, and intelligent. *Miranda v. Arizona*, 384 U.S. 436 (1966). A reasonable review of the record reveals that Petitioner—aware of his rights—affirmatively sought to speak with Detective Blansitt. Therefore, after reviewing the totality of the facts in the case and the fairness of the whole trial, there is no indication that this alleged error "fatally infected the trial" and deprived Petitioner of "the fundamental fairness which is the essence of due process." *Mercer,* 844 F.2d at 587. As such, Petitioner has neither demonstrated cause for the default nor prejudice from a violation of federal law. Ground One is procedurally defaulted and is denied.

**Ground Two: Petitioner claims he received ineffective assistance of trial counsel because counsel did not move to suppress his pretrial identification because it was suggestive. Doc. [1-1] at 7.**

As stated *supra*, Petitioner did not set forth this claim in his amended Rule 29.15 motion, and as such, it is procedurally defaulted. However, a narrow exception has since been created in *Martinez v. Ryan*, 566 U.S. 1, 17 (2012) where: "(1) the claim of ineffective assistance of trial counsel was a 'substantial' claim; (2) the 'cause' consisted of there being 'no counsel' or only 'ineffective' counsel during the state collateral review proceeding; and (3) the state collateral review proceeding was the 'initial' review proceeding with respect to the 'ineffective-assistance-of-trial-counsel claim.'" *Kemp v. Kelley*, 924 F.3d 489, 499 (8th Cir. 2019) (quoting *Dansby v. Hobbs*, 766 F.3d 809, 834 (8th Cir. 2014)); *see Martinez*, 566 U.S. at 14.

To show that the claim of ineffective assistance of trial counsel is substantial, "the prisoner

9

must demonstrate that the claim has some merit." *Martinez*, 566 U.S. at 14. To prove that the ineffective assistance of trial counsel claim has merit, Petitioner must show that his trial counsel's performance was deficient and prejudiced him as set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To determine whether counsel in the initial-review collateral proceeding (where the claim of ineffective assistance of trial counsel should have been raised) was ineffective for not bringing an ineffective assistance of trial counsel claim, this Court must also turn to the standards set forth in *Strickland*. To prevail on an ineffective assistance of counsel claim, a petitioner must show that his attorney's performance fell below an objective standard of reasonableness and that he was prejudiced thereby. *Id.* at 688. "At the least, this requires the petitioner to demonstrate that the issue—in this case, PCR Counsel—was ineffective under [*Strickland*]—'was debatable among jurists of reason.'" *Harris v. Wallace*, 984 F.3d 641, 648-49 (2021) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). With respect to the first *Strickland* prong, there is a strong presumption that counsel's conduct falls within the wide range of professionally reasonable assistance. *Id.* at 689. To establish the "prejudice" prong, the movant must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

Here, Petitioner alleges that his trial counsel failed to file a proper and legally adequate motion to suppress identification and his trial counsel should have done so because the physical line-up procedure was improper due to Petitioner's disproportionally taller height and lighter skin complexion. Doc. [1-1] at 7. The Missouri Court of Appeals noted in its opinion that Petitioner's amended motion for postconviction relief "merely asserted that Trial Counsel's error reduced [Petitioner's] prospects for relief from appellate courts and potentially barred review in federal courts. [Petitioner] concluded that but for Trial Counsel's error in failing to adequately preserve

the claim for appellate review, the result of [Petitioner's] proceedings would have been different." Doc. [9] at 10. The Missouri Court of Appeals reviewed his claim *ex gratia* and denied Petitioner post-conviction relief finding:

> Here, in [Petitioner]'s *pro se* motion he merely alleges that the lineup was improper because other participants had lighter skin complexion and were shorter, which caused him to sit down. Other than these two differences in physical characteristics, [Petitioner] did not allege any factual support for his claim that the lineup was impermissibly suggestive. Even assuming [Petitioner]'s bare allegations as true, establishing that the lineup participants were physically dissimilar is an insufficient basis in establishing impermissible suggestiveness of a lineup identification. [Petitioner] did not allege any facts that the identification lineup was either impermissibly suggestive or that any suggestiveness led to unreliable identification. Thus, [Petitioner] failed to plead any facts warranting relief in either his *pro se* or amended motion.

Doc. [9-10] at 6-7.

The decisions of the state appellate court are entitled to deference. 28 U.S.C. § 2254(d). Petitioner has neither demonstrated that his ineffective assistance of trial counsel claim is substantial nor that it would be debatable among jurists of reason that his post-conviction counsel was ineffective under *Strickland*. The actions of Petitioner's trial counsel and post-conviction counsel were reasonable. Petitioner failed to plead any facts warranting relief regarding his claim that the lineup was impermissibly suggestive and he has not shown that there is a reasonable probability that, but for this alleged error, the result of the proceedings in state court would have been different. Petitioner's claim does not fit within the narrow exception created by *Martinez* to overcome procedural default. Petitioner's second ground is procedurally defaulted and denied.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that the petition of Demetrius Hulsey for writ of habeas corpus pursuant to 28 U.S.C. § 2254 is **DENIED**.

**IT IS FINALLY ORDERED** that the Petitioner has not made a substantial showing of a denial of a constitutional right and this Court will not grant a certificate of appealability.

A separate judgment in accordance with the Memorandum and Order is entered this same date.

Dated this 22nd day of September 2021

                                                        MATTHEW T. SCHELP
                                                        UNITED STATES DISTRICT JUDGE